IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AMANDA LOUISE VANCE,              )
                                  )
            Plaintiff,            )
                                  )
                                  ) Case No. CIV-18-151-RAW-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Amanda Louise Vance (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. She has a college education and has worked in the past as an office clerk, medical sales representative, hair stylist, and customer service representative. Claimant alleges an inability to work beginning on December 18, 2014, due to limitations resulting from fibromyalgia, migraine headaches, depression, irritable bowel syndrome, sleep apnea, GERD, and aortic aneurysm (ascending).

## Procedural History

On February 20, 2015, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On

3

March 3, 2017, the Administrative Law Judge("ALJ") Lantz McClain conducted a hearing in Tulsa, Oklahoma, at which Claimant appeared and testified. On May 9, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 14, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error by failing to provide "good reasons" for assigning limited weight to the opinion of her treating rheumatologist Sara Newell, M.D.

### Evaluation of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of arthritis, fibromyalgia, diabetes mellitus, sleep apnea, and obesity. (Tr. 13). He determined Claimant could perform light work with additional limitations. In so doing, the ALJ found Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk at least six hours in an

4

eight-hour workday; and sit at least six hours in an eight-hour workday. Claimant could only occasionally climb things such as ramps or stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 15).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as an office clerk, medical sales representative, hair stylist, and customer service representative. (Tr. 21). Relying on the VE's testimony, the ALJ also determined Claimant could perform the representative jobs of mailroom clerk and assembler, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 22). As a result, the ALJ concluded Claimant was not under a disability from December 18, 2014, her alleged onset date, through the date of the decision. (Tr. 23).

Claimant contends the ALJ improperly considered the opinions from her treating rheumatologist Dr. Newell. The ALJ summarized the treatment records from Dr. Newell in the decision. He noted that in November of 2015, Claimant complained of pain in her arms, wrists, hands, ankles, and feet. She reported fatigue which was slightly improved because of her CPAP machine. Claimant's examination was positive for tenderness in her bilateral elbows, wrists, hands, hips, knees, ankles, feet, and back, but she was not in acute distress. All 18 tender points for fibromyalgia were positive, and Claimant exhibited decreased range of motion in her

5

right hip/cervical spine. She did not show decreased muscle or grip strength, and her range of motion was good in her shoulders, elbows, and left hip. Her gait was normal. (Tr. 17, 561-67).

He discussed Dr. Newell's treatment notes from January of 2016, wherein Claimant noted her medication was helping with her fatigue and pain. She still had tenderness in her bilateral elbows, wrists, hands, hips, knees, ankles, and back. All 18 tender points for fibromyalgia were positive, and her range of motion was decreased in her cervical spine area. There was no evidence of decreased muscle grip or strength, and Claimant had a good range of motion in her shoulders. (Tr. 17, 521-26). The ALJ further discussed treatment notes from April of 2016, wherein Claimant was positive for tenderness in all peripheral joints and 18/18 fibromyalgia tender points. Her cervical and lumbar spines were tender and her range of motion in her cervical spine was decreased. Her fibromyalgia was noted to be stable. (Tr. 17, 499-502).

In July of 2016, Claimant reported stiffness in her fingers and toes, 18/18 fibromyalgia tender points were positive, and she had tenderness in her shoulders, elbows, wrists, fingers, hips, knees, and ankles. Her cervical spine was tender, and she had a decreased range of motion, but exhibited no decreased muscle or grip strength. (Tr. 17, 481-84). By the end of 2016 and January of 2017, Claimant continued to report morning stiffness in her

6

fingers and toes, 18/18 fibromyalgia tender points were positive, and she had tenderness in her shoulders, elbows, wrists, fingers, hips, knees, and ankles. Her cervical spine remained tender with decreased range of motion, but there was no decreased muscle or grip strength. (Tr. 17, 438-41, 458-62).

On February 8, 2017, Dr. Newell completed a medical source statement based upon Claimant's connective tissue disease, inflammatory arthritis, and fibromyalgia. She noted clinical and objective signs by Claimant included decreased range of motion of the cervical spine, swelling and tenderness of the lumbar spine, elbows, knees, and ankles, and she exhibited all the tender points for fibromyalgia. Based on her treatment of Claimant, Dr. Newell determined Claimant could occasionally lift less than ten pounds and rarely lift ten pounds, she could rarely twist, stoop, balance, crouch, crawl, or climb. Claimant could rarely reach, could occasionally handle or finger, and could frequently feel. Dr. Newell determined claimant could sit for 10-15 minutes at one time before needing to change positions and could sit for four hours in an eight-hour workday. Claimant could stand for ten minutes at one time before needing to sit down or walk around and could stand for less than two hours in an eight-hour workday. She needed to shift positions at will from sitting, standing, and walking. Claimant needed to take unscheduled breaks every hour because of pain, paresthesia, numbness, and chronic fatigue. She did not

7

need an assistive device and did not need to elevate her legs with prolonged sit or stand. Dr. Newell estimated that Claimant's symptoms would interfere with her attention and concentration and she would need to perform simple work tasks 25% of an eight-hour workday. She found Claimant was unable to perform "low stress" work and her impairments produced "good days" and "bad days." Dr. Newell estimated Claimant could miss work or need to leave early because of her condition more than four days per month. (Tr. 19-20, 606-08).

The ALJ declined to assign Dr. Newell's opinion "controlling weight," but instead determined her opinions on the medical source statement were entitled to "limited weight because her treatment notes fail[ed] to support such severe limitations." He stated that although Claimant had tenderness in her spine, hands, elbows, knee, and ankles, there was no evidence of decreased strength and her range of motion was good except for her cervical spine. He noted Claimant had swelling in her hands and wrists, but "there was no evidence of decreased grip strength or inability to perform fine or gross manipulations. The ALJ determined Claimant was able to perform a reduced range of light work "[g]iven her lack of diminished strength, generally good range of motion and ability to ambulate effectively[.]" (Tr. 20).

"As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is]

required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2).

As set forth herein, the ALJ included a detailed discussion of Dr. Newell's treatment records in his decision. He determined that Dr. Newell's treatment notes did not support the severe limitations she included on the medical source statement. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (noting opinion of treating physician may be reasonably discounted when not supported by his own treatment notes).

Moreover, he relied upon objective findings that Claimant did not exhibit difficulty with ambulation or decreased muscle weakness or loss of grip strength to determine she could perform a reduced range of light work. *See* Soc. Sec. Rul. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) ("As with any claim for disability benefits, before we find that a person with [a medically determinable impairment] of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any

9

substantial gainful activity."). No error is found with the ALJ' consideration of Dr. Newell's opinion.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE